### PEOPLE v. REESE.

1. WORDS AND PHRASES—NOW.

The word *now* is an adverb generally implying the present time, but the context may give it an ambulatory meaning, not with reference to the moment of utterance but to a time contemporaneous with something done.

2. STATUTES—CONSTRUCTION—INTENT.

The construction to be given the term *now in force* in a statute depends upon the total context, the circumstances surrounding the legislation, and what may be deduced from them as to the legislative intent.

---

REFERENCES FOR POINTS IN HEADNOTES

[2] 50 Am Jur, Statutes § 223.
[3, 4] 50 Am Jur, Statutes § 407 *et seq.*

3. Same—Penal Statutes.

A penal statute must clearly and explicitly define the crime and classify the acts which constitute it so that any ordinary person can tell what he may or may not do thereunder.

4. Prisons—Construction of Statutes—Escapes.

Statute relative to Detroit house of correction, enacted in 1867 and providing that "all laws now in force, applicable to persons confined in the State prison, shall be and are hereby made applicable to all persons who are, or hereafter shall be confined in said house of correction, who have been transferred to said house of correction from the State prison," is construed as embracing statutes in force at time defendant escaped from such house of correction rather than at time it was enacted, although even as of such time it would not permit an escape to go unpunished, merely because the particular house of correction was not mentioned in the then-existing prison break statute (CL 1948, §§ 750.193, 750.194, 802.55).

Appeal from Wayne; Rashid (Joseph G.), J. Submitted April 13, 1961. (Docket No. 70, Calendar No. 48,858.) Decided June 28, 1961.

Robert E. Reese was charged with escape from Detroit House of Correction. Information quashed. The people appeal.- Reversed.

*Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel Brezner* and *Angelo A. Pentolino,* Assistant Prosecuting Attorneys, for the people.

*Nick P. Krust* (*Gerald Benjamin,* of counsel), for defendant.

Edwards, J. In this case the prosecuting attorney of Wayne county appeals from a circuit judge's interpretation of 2 Michigan statutes which resulted in his quashing the information filed against a State prisoner for escaping from the Detroit house of correction.

Robert Reese was convicted in the circuit court of Ingham county of issuing checks with insufficient funds and committed to the State prison of southern Michigan at Jackson in 1953. Thereafter he was transferred from that prison to the Detroit house of correction where on March 12, 1954, he escaped. Following his return, he was charged under CL 1948, § 750.193 (Stat Ann 1953 Cum Supp § 28.390), and counsel for defendant moved to quash the information because this statute did not include the Detroit house of correction within the definition of "prisons" as to which it applied. The prosecuting attorney of Wayne county responded by citing CL 1948, § 802.55 (Stat Ann 1954 Rev § 28.1845), which provides in part:

"All laws *now* in force, applicable to persons confined in the State prison, shall be and are hereby made applicable to all persons who are, or hereafter shall be confined in said house of correction, who have been transferred to said house from the State prison, or who shall be sentenced to confinement in said house, on conviction of any offense punishable by confinement in the State prison." (Emphasis supplied.)

This statute was first passed in 1867. The prison escape statute in force in that year read:

"If any person, being imprisoned in the State prison for any term less than for life, shall break prison and escape, or break prison, though no escape shall actually be made, or shall, by force and violence, attempt to escape therefrom, he shall be punished by further imprisonment in the State prison not more than 3 years, or by fine not exceeding $500; and every prisoner who shall actually escape as aforesaid, shall, after his return to such prison, be imprisoned for as long a time as remained unexpired of his former sentence, at the time of

such escape, besides such further term of imprisonment as aforesaid." CL 1857, § 5843.

Subsequently this statute was amended and reenacted until in 1954, when defendant's escape occurred, it then read:

"Any person, being imprisoned in any prison of this State for any term, who shall break prison and escape, or break prison though no escape be actually made, or shall escape, or shall leave said prison without being discharged from said prison by due process of law, or shall attempt to break prison or escape therefrom, shall be guilty of a felony, punishable by further imprisonment for not more than 3 years, and every prisoner who shall actually break prison or escape or attempt to break prison, or attempt to escape as aforesaid, shall after his return to such prison, be imprisoned for as long a time as remained unexpired of his former sentence, at the time of such breaking, escape or attempt to break or escape, besides such further term of imprisonment as aforesaid. Such prisoner who shall break prison or escape or attempt to break prison or attempt to escape as aforesaid, shall be charged with said offense and tried in the courts of the county wherein the administrative offices of the prison may be, to which said prisoner was committed or transferred, at the time of the breaking, escape, or attempt to break or escape. The word 'prison' as used in this section shall include any Michigan State prison, penitentiary, reformatory, State house of correction, the grounds, farms, shops, road camps or places of employment operated by such institution or under control of the officers thereof, or of any police officers of this State: Provided, That escaping from the lawful custody of any guard or prison official or employee while outside the confines of such prison shall be deemed to be a violation of this section." CL 1948, § 750.193 (Stat Ann 1953 Cum Supp § 28.390).

The parties herein agree that the 1954 statute under which defendant was charged with his break from the house of correction can only be applied to the present case if the term "all laws now in force" be interpreted to mean "all laws now in force or hereinafter enacted."

It appears that in 1958 a statute was passed which disposes of this matter prospectively. See PA 1958, No 215 (Stat Ann 1959 Cum Supp § 28.390). But, in the opinion of the circuit judge who granted the motion to quash, we are advised that there are 26 escapees who, if apprehended, would have to be prosecuted (if at all) under the same section (CL 1948, § 750.193 [Stat Ann 1953 Cum Supp § 28.390]) as is attempted to be used in relation to this particular defendant.

Judge Rashid's grant of the motion to quash was founded upon his desire to have a Supreme Court interpretation of the statute concerned. His opinion set forth his reasons for concluding that the 1867 prison escape statute had been repealed by implication. He said in part:

"I cannot help but agree with the defendant's theory, section 802.55 Compiled Laws 1948, enacted in 1867, and I am inclined to construe that statute to mean just what it says, 'all laws now in force.'

"Now, obviously, section 750.193 Compiled Laws 1948 was not in force at that time. First, the act then as it existed, which counsel called my attention to yesterday provided for a 3-year penalty, plus a $500 fine. The act under which this prosecution is brought which is part of our penal code of 1931,* not only changes the penalty, but revised in extensive terms the act which was in existence in 1867. It not only changes the penalty, but also spells out what is meant by 'a prison.' It also has other provisions and the one you called my atten-

* PA 1931, No 328. See CL 1948, § 750.1 et seq., as amended (Stat Ann § 28.191 et seq., as amended).—REPORTER.

tion to, 'escape from the custody of a guard or prison official,' hence I think I am justified as a matter of law in concluding that the prison break act which was in existence in 1867 when section 802.55 was enacted, has been repealed by implication, not only by reason of the change of sentence, but by reason of the fact that it covers a whole new subject matter."

The meaning of the term "now in force" would seem at first glance to be a simple matter to define. Actually, there is considerable doubt about the significance of the phrase since 2 well-established and permissible interpretations exist.

"NOW. An adverb which may be employed in any of several senses. It is said to have a fixed and definite meaning, and generally it implies the present time. However, the word does not in all circumstances necessarily mean at the present time, and the intent with which the term is used as gathered from the context determines its meaning. The word is sometimes used, not with reference to the moment of speaking, but to a time contemporaneous with something done." 66 CJS, p 720.

Whether in a given statute the term "now in force" should be held to apply to the moment of adoption of the statute or to the moment of happening of a contemplated future event depends upon the total context, the circumstances surrounding the legislation, and what may be deduced from them as to the legislative intent.

It seems clear to us that in 1867, if defendant had escaped from the house of correction, the then-existing prison escape statutory penalties would have applied. We find it impossible to interpret the legislative language and intent otherwise.

This still leaves the question, however, as to whether the legislature intended by subsequent amendment and re-enactment of this statute to

leave no statutory penalty for escape from the Detroit house of correction. Nothing in the legislative language suggests this conclusion. And, of course, as we have seen, statutory penalties for escape from State prisons were maintained.

It is, of course, true that defendant was committed to a State prison, and was transferred to and escaped from the Detroit house of correction at a time when it was not specifically referred to in the prison break statute.

It is also true, as appellee suggests, that in interpreting penal statutes this Court has indicated that it will require clarity and explicitness in the defining of the crime and the classification of acts which may constitute it. The reasoning behind this rule is that a penal statute should be so clear that any ordinary person can tell what he may or may not do thereunder. *People* v. *Sarnoff,* 302 Mich 266 (140 ALR 1206); *People* v. *Goulding,* 275 Mich 353.

We find it difficult to believe, however, that (assuming defendant had read these 2 statutes) he could have been misled into thinking that they constituted *carte blanche* for a prisoner situated like himself to escape with impunity.

The last proviso of the prison escape statute in effect at that moment said:

"Provided, That escaping from the lawful custody of any guard or prison official or employee while outside the confines of such prison shall be deemed to be a violation of this section." CL 1948, § 750.193 (Stat Ann 1953 Cum Supp § 28.390).

This does not seem consistent with appellee's contention that the statutory phrase "Any person, being imprisoned in any prison of this State" should be narrowly construed.

Further, any suggestion that placement at Detroit house of correction should be read as invoking

merely administrative penalties is rebutted by CL 1948, § 750.194 (Stat Ann § 28.391), which imposes a statutory penalty of double the sentence then being served on any prisoner at Detroit house of correction who escaped while committed to that institution.

Under all of these circumstances, we feel that the 2 statutes, CL 1948, § 802.55 (Stat Ann 1954 Rev § 28.1845), and CL 1948, § 750.193 (Stat Ann 1953 Cum Supp § 28.390), must be read together and that the "ambulatory" meaning should be given to the words "now in force" contained in the first one. The word "now" should be held applicable to the time of the contemplated event, namely, the prison break.

While this is a matter of first impression in Michigan, the topic has been considered by other courts. Where the context and circumstances of the statute suggested that the legislature intended the word "now" to apply in an ambulatory fashion to the moment of happening of a future event, the courts have given it this interpretation. *Larson* v. *American Title & Insurance Co.* (Fla), 52 So2d 816; *Protest of Chicago, R. I. & P. R. Co.,* 137 Okla 186 (279 P 319); *Arkansas Utilities Co.* v. *City of Paragould,* 200 Ark 1051 (143 SW2d 11); *State, ex rel. Brewster,* v. *Mayor and Commissioners of City of Lawrence,* 101 Kan 225 (165 P 826).

Reversed.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, KAVANAGH, and SOURIS, JJ., concurred.