PEOPLE v. HOAGLIN.

1. CRIMINAL LAW—EVIDENCE—CONFESSIONS—FRAUD—COERCION.
   In prosecution for failing to render reasonable assistance after automobile accident, defendant's signed statement, made next day after accident, was properly admitted over her objection that she should have had benefit of counsel when making it, in absence of showing of fraud or coercion; its value as evidence being for jury.

2. SAME—CONTINUANCE—ABSENT WITNESS—ABUSE OF DISCRETION—COURT RULE.

Court's refusal to grant defendant's motion to continue case, on ground of inability to subpœna witness, was not abuse of discretion, where affidavit annexed to motion did not show what efforts had been made to locate witness or what he would swear to were he present (Court Rule No. 36 [1931]).

3. SAME—UNFAVORABLE PUBLICITY.

Motion for continuance, based on claim that unfavorable publicity necessitated delay until public excitement died down, was properly denied, where no proof was offered to substantiate said claim.

4. SAME—ACCESSORY—TRIAL—INSTRUCTION—MOTOR VEHICLES.

Instruction that, in order to convict defendant charged with aiding and abetting violation of motor vehicle law (1 Comp. Laws 1929, § 4722), it would be necessary to convict defendant charged as principal, was correct, where latter, under statute, was only possible principal.

5. SAME—MOTOR VEHICLE ACCIDENT—DUTY TO RENDER ASSISTANCE—STATUTES.

Driver of automobile and passengers therein are not excused from rendering every possible assistance to pedestrian struck by car because they think him to be dead, rendering medical assistance futile, since it is not within their province to determine whether or not victim is dead, and even if he is, there is duty to care for remains (1 Comp. Laws 1929, § 4722).

6. SAME—DELEGATION OF DUTY.

Driver of automobile striking pedestrian did not perform statutory duty to render assistance by instructing passengers in car to go back and take care of victim and not leaving scene of accident until after receiving assurance that victim was dead, since responsibility may not be discharged by such delegation.

7. SAME—FAILURE TO STOP FELONY—FAILURE TO RENDER ASSISTANCE MISDEMEANOR—STATUTES.

Failure of automobile driver to stop, in event of accident involving injury or death to person, constitutes felony; but failure to render assistance to victim after stopping constitutes misdemeanor (1 Comp. Laws 1929, §§ 4722, 4745, 4748).

8. SAME—APPLICABLE PENALTY.

If any uncertainty develops as to which penal clause is applicable, accused is entitled to have lesser of two penalties administered.

9. SAME—ACCESSORY TO MISDEMEANOR.

It is proper to charge one aiding and abetting in commission of misdemeanor.

10. SAME—ACCESSORY TO MISDEMEANOR SUBJECT TO SAME PUNISHMENT AS PRINCIPAL.

Where principal is charged with misdemeanor, accessory charged with aiding and abetting in commission of same is subject to same punishment as principal, under common law as well as statute under which charge is laid (1 Comp. Laws 1929, § 17253).

11. SAME—ERRONEOUS SENTENCES.

Where offense of which defendants were convicted constitutes misdemeanor, but they were erroneously given punishment provided for felony, convictions are affirmed, on appeal, and case remanded to trial court for imposition of proper sentences (1 Comp. Laws 1929, §§ 4722, 4745, 4748).

Appeal from Calhoun; Hatch (Blaine W.), J. Submitted January 12, 1933. (Docket Nos. 157, 158, Calendar Nos. 36,266, 36,267.) Decided March 2, 1933.

Euretta Hoaglin and Sam Daleo were convicted of failing to render reasonable assistance after a motor vehicle accident. Convictions affirmed; remanded for proper sentence.

*Adrian F. Cooper* and *George H. De Mund,* for appellants.

*Patrick H. O'Brien,* Attorney General, *George Murphy,* Assistant Attorney General, *William J. Kearney,* Prosecuting Attorney, and *Horace M. Mechem,* Assistant Prosecuting Attorney, for the people.

BUTZEL, J.   Defendant Euretta Hoaglin was charged with being the driver of a car involved in an accident resulting in injury and death to Charles Kreger, and with knowingly and wilfully failing to render him reasonable assistance, including the carrying of the deceased to a physician or surgeon for medical and surgical treatment, it being apparent that such treatment was necessary.   Defendant Sam Daleo was charged with procuring, aiding, abetting, etc., in the commission of the crime, as defined in 1 Comp. Laws 1929, § 4722.

Upon the evening of October 6, 1931, defendant Hoaglin, 21 years of age, and in the 11th grade of the Albion high school, met a friend, Weltha Gettys, who was anxious to visit an injured brother at the Gettys home some distance from Albion.   Miss Gettys made the acquaintance of one Jim Thompson as he was seated in the car of defendant Sam Daleo, and the latter agreed to transport the girls to the Gettys home in the country.   Shortly after they started for their destination, Euretta was permitted to drive the car, Daleo seating himself beside her, while Miss Gettys and Thompson occupied the rear seat.   Euretta drove the car at a rate between 40 and 45 miles an hour.   At a point on the Duck Lake road about five miles from Albion, the car struck Kreger, who was walking in a northerly direction near the center of the hard-surfaced road. The car was brought to a stop and Daleo and Thompson went back to where Kreger was lying.   Euretta remained seated in the car, and Miss Gettys stood outside, near the rear door.   There were no eyewitnesses to the accident except the defendants and their companions.   They testified that they stopped for some time, Weltha stating that it was from five to six minutes, and Euretta claiming it was "for

ages." A farmer living nearby stated he heard the crash, and that about 10 minutes elapsed before he heard the car start up again.

Daleo testified that after he and Thompson examined Kreger's body, as it lay in the highway, they carried it to the side of the road; that Thompson felt the injured man's wrist and detected no pulse; and that Daleo bent down and put his ear close to the body, but found no signs of life. They concluded that Kreger was dead, and left him lying at the side of the road with his head turned towards the gravel. The car itself was damaged and showed that there had been a very severe impact. The glass in the headlights was broken, and large dents appeared in the radiator and mud guards.

A hasty consultation was held by the occupants of the car, with the result that they determined to leave the scene of the accident as rapidly as the car would take them. They drove to the Gettys home and then to Eaton Rapids, where Daleo 'phoned his father for assistance, as they were having difficulty with the car. Daleo's father and brother drove to Eaton Rapids and towed the car back to Albion. Daleo made an effort to hide the car until it was repaired, and the girls were cautioned to keep quiet about the entire affair. If asked about the damage to the car, they were to attribute it to a collision with a truck near Dimondale.

The following morning the body was found, and an investigation followed immediately. The coroner testified that the body showed very severe injuries, including a fracture of the occipital bone of the skull. Sufficient facts were discovered to reveal the participants in the accident. An officer went to the school Euretta attended and brought her to the police station, where she voluntarily made and

signed a statement giving her version of the accident. Thompson disappeared immediately after the accident, and Daleo testified that he did not know where he had gone. Thompson was an acquaintance of Daleo, and conversed with him in the Italian language immediately after the accident.

Defendant Hoaglin was charged with the offense set forth in the information, which also charged Daleo with being the owner of the car and being then and there present at the time of the accident and having then and there procured, counseled, aided, and abetted defendant Hoaglin in the commission of the offense.

Numerous errors are claimed; many of them do not even merit discussion. The court properly admitted defendant Hoaglin's signed statement, made the day following the accident. He instructed the jury that, before giving it any consideration, they should determine that it was voluntary and not tainted with fraud, deceit, compulsion, etc. Defendant makes no claim that it had been obtained by actual coercion or fraud. She contends, however, that she should have had the benefit of counsel or friends at her side when she made and signed the statement. Her claim is insufficient to show either fraud or coercion. The statement was properly admitted, its value to be determined by the jury. *People* v. *Barker,* 60 Mich. 277 (1 Am. St. Rep. 501); *People* v. *Swetland,* 77 Mich. 53, 60; *People* v. *Biossat,* 206 Mich. 334; *People* v. *Johnson,* 215 Mich. 221; *People* v. *Treichel,* 229 Mich. 303; *People* v. *Greeson,* 230 Mich. 124.

There was no abuse of discretion by the court in its refusal to continue the case over the term on the motion of defendants, citing their inability to subpœna Thompson as a witness. Nine days elapsed

after the motion was made before the trial began. The affidavit annexed to the motion did not show what efforts had been made to locate the witness or what he would swear to were he present. Court Rule No. 36 (1931) was not complied with. *People* v. *Eamaus,* 207 Mich. 442; *People* v. *Burby,* 218 Mich. 46; *People* v. *Fillian,* 243 Mich. 28. The correctness of the court's decision is further shown by Daleo's own testimony that Thompson disappeared immediately after the accident and that he did not know what had become of him. The court also properly denied a continuance based on defendant's claim that unfavorable publicity necessitated a delay until public excitement had died down. No proof was offered by defendant to substantiate this claim.

The judge charged the jury that it would be necessary to convict defendant Hoaglin in order to find defendant Daleo guilty. Inasmuch as 1 Comp. Laws 1929, § 4722, applies to drivers only, the instruction was correct, as Miss Hoaglin was the only possible principal, and Daleo was charged with aiding and abetting. *State* v. *McFarland,* 158 Wash. 652 (291 Pac. 719). There is ample testimony to show that Daleo not only aided and abetted in everything that was done, but also that he took an active part in directing the actions of the parties after the accident.

It is further claimed that defendants were not guilty of any offense because they could not render reasonable assistance to Kreger, who was dead, and it would have been futile to take him to a physician or surgeon for medical and surgical treatment, inasmuch as it was apparent that such treatment was unnecessary. Aside from the cruel and inhuman manner in which Kreger's body was dragged across the highway and left exposed at the side of the road, it was not within the province of the driver or the

others to determine whether or not Kreger was dead at the time the body was abandoned. There may have been a spark of life remaining. Defendants are not physicians, and it was their duty to carry him to a physician or surgeon for medical and surgical inspection and treatment. Under a similar statute, it was held that, even assuming the immediate death of the victim, there still remained a duty to care for his remains. *People* v. *McKee,* 80 Cal. App. 200 (251 Pac. 675).

Defendant Hoaglin claims that she performed the statutory duty incumbent upon her by instructing Daleo and Thompson to go back and take care of the injured man. She did not leave the scene of the accident until after receiving their assurances that Kreger was dead. In *People* v. *Curtis,* 225 N. Y. 519 (122 N. E. 623), a prosecution brought under a similar statute, the defense was interposed that the defendant did not drive away until his companion had left the car, examined the injured party, and declared that he was all right. The court there held that his obligation could not be discharged by delegation to another party. Such a delegation of duty leaves defendant responsible for any dereliction on the part of those to whom she has intrusted the performance of her duties. The record in the present case shows that the defendants were principally interested in driving from the scene of the accident as rapidly as possible so as to avoid detection.

Defendant Hoaglin was sentenced to imprisonment for a term of one to five years, and defendant Daleo for not less nor more than five years. Some time after the sentence was rendered, and while the case was in process of being appealed to this court, the opinion of *People* v. *Thompson,* 259 Mich. 109, was handed down. In a manner deserving of the highest commendation, the prosecuting attorney, of

his own volition, has called the attention of the court to the question of whether the sentences imposed upon defendants are correct, in view of the provisions of 1 Comp. Laws 1929, §§ 4722, 4745, 4748, and their proper construction as set forth in *People* v. *Thompson, supra.*

Defendants were charged with a violation of that part of subdivision (c) of section 30 of the uniform motor vehicle act (1 Comp. Laws 1929, § 4722), requiring that the driver of a motor vehicle involved in an accident resulting in injury or death to any person "shall render to any person injured in such accident reasonable assistance, including the carrying of such person to a physician or surgeon for medical or surgical treatment if it is apparent that such treatment is necessary or is requested by the injured person." Section 4722, *supra,* provides as follows:

"Duty to stop and report in event of accident.

"(a) The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop such vehicle at the scene of such accident and any person violating this provision shall upon conviction be punished as provided in section fifty-six of this act.

"(b) The driver of any vehicle involved in an accident resulting in damage to property shall immediately stop such vehicle at the scene of such accident and any person violating this provision shall upon conviction be punished as provided in section fifty-three-a of this act.

"(c) The driver of any vehicle involved in any accident resulting in injury or death to any person or damage to property shall also give his name, address, and the registration number of his vehicle, also the name and address of the owner, and exhibit his operator's or chauffeur's license to the person

struck or the driver or occupants of any vehicle collided with and shall render to any person injured in such accident reasonable assistance including the carrying of such person to a physician or surgeon for medical or surgical treatment if it is apparent that such treatment is necessary or is requested by the injured person.

"(d)    The driver of every motor vehicle involved in an accident resulting in a vehicle or vehicles becoming so disabled as to be incapable of being propelled in the usual manner, or resulting in personal injury or death of any person shall report such accident to the nearest or most convenient police station or police officer within forty-eight hours after such accident. The officer receiving such report shall forthwith forward the same to the commissioner of public safety on forms to be prescribed by him. Such report shall not be available for use in any court action, but it shall be for the purpose of furnishing statistical information as to the number and cause of accidents."

Section 56 of the motor vehicle act (1 Comp. Laws 1929, § 4748) is entitled: "Penalty for failure to stop in event of accident involving injury or death to a person." The section makes the violation of "section thirty of this act relative to the duty to stop," a felony. Section 53 of the same act (1 Comp. Laws 1929, § 4745) provides that any other violation, unless designated as a felony, constitutes a misdemeanor, the punishment of which, if a first offense, is a maximum term of 10 days of imprisonment in the county jail, or a fine of not more than $100. Defendants were not charged with a failure to stop. It is quite conclusive that they did stop. They, therefore, are charged with a failure to give assistance under subdivision (c), section 30, *supra*. This is a misdemeanor. *People* v. *Thompson, supra.*

The prosecuting attorney has attempted to tie up subdivision (a) with subdivision (c) of section 30, *supra.* He shows that, under the construction adopted in *People* v. *Thompson, supra,* if a driver does not stop after causing the slightest injury to another, he is guilty of a felony. If, however, the driver does stop, after causing a most severe injury which may prove fatal if the injured person is not cared for, and he refuses or neglects to give proper assistance, he is guilty of a misdemeanor only. No matter how necessary the change of statute law may be, it must be brought about by legislative enactment. Even assuming merit in the State's claim that section 56 applied to all of section 30, except section 30 (b), the legislative intent is not at all clear. If any uncertainty develops as to which penal clause is applicable, the accused is entitled to have the lesser of two penalties administered. *People* v. *Lockhart,* 242 Mich. 491. The conviction was proper, but the sentences improper.

Defendant Daleo claims that inasmuch as defendant Hoaglin has only been found guilty of misdemeanor, he cannot be convicted of aiding and abetting in the violation of the statute, as charged in the indictment. It is proper to charge one with aiding and abetting in the commission of a misdemeanor. The rule is fully set forth in the learned opinion of Justice CHRISTIANCY, in *Shannon* v. *People,* 5 Mich. 71, on pages 86 and 87. See, also, *Commonwealth* v. *Stevens,* 10 Mass. 181; *United States* v. *Gooding,* 12 Wheat. (25 U. S.) 460; *Brannan* v. *State,* 43 Ga. App. 473 (159 S. E. 296); *United States* v. *Snyder,* 14 Fed. 554. It was proper, therefore, to charge Daleo with aiding and abetting in the commission of the misdemeanor, and, found guilty, he is subject to the same punishment as the principal under the

common law as well as under 3 Comp. Laws 1929, § 17253.

The judgments of conviction are affirmed, the sentences are set aside, and the cases remanded to the trial court for the imposition of new sentences.

McDONALD, C. J., and CLARK, SHARPE, and WIEST, JJ., concurred with BUTZEL, J. POTTER and FEAD, JJ., concurred in the result. NORTH, J., did not sit.