PEOPLE v SARTOR

Docket No. 195152. Submitted December 2, 1998, at Lansing. Decided May 28, 1999, at 9:00 A.M.

John B. Sartor was convicted by a jury in the Wexford Circuit Court of failing to stop at the scene of a serious personal injury accident. The defendant, while driving a snowmobile, collided with and instantly killed Scott Hughes, who had been driving alone on a snowmobile. The decedent's brother, who along with others had been observing the decedent drive around the field in which the accident occurred, thought that he saw a snowmobile roll over, went to investigate, discovered the defendant's toppled and damaged snowmobile, and, after helping the defendant to right his snowmobile, saw his brother in the snow some distance away. The brother of the decedent went to a nearby lodge and instructed the others to summon assistance. The brother then returned with others to the body of the decedent, where the defendant was observed attempting to take the decedent's pulse. The defendant remained at the scene of the accident at least until after an emergency medical technician had arrived and, although talking briefly to a friend of the decedent at the scene, left sometime thereafter without giving his name or any information regarding the accident. The defendant's identity remained a mystery to authorities for almost two years until an acquaintance of the defendant contacted the police. The defendant appealed.

The Court of Appeals *held*:

1. The statute under which the defendant was convicted, § 617 of the Michigan Vehicle Code, MCL 257.617; MSA 9.2317, makes it a felony for the driver of a vehicle who knows or has reason to believe that he has been involved in an accident that has resulted in serious injury or death of a person to fail to stop at the scene of the accident and to remain until the requirements of § 619, MCL 257.619; MSA 9.2319, are met. Section 619 requires that a driver involved in such an accident give his name, address, and vehicle registration number and exhibit his operators license "to the person struck or the driver or occupants of any vehicle collided with" and to render reasonable assistance in securing medical aid or transportation for any person injured.

2. Section 619 clearly requires a driver involved in an accident that resulted in serious injury or death to give his personal and vehicle information only to "the person struck or the driver or occupants of any vehicle collided with." Because the undisputed facts showed that the decedent died instantly and was traveling alone when the accident occurred, there was no person designated in § 619 to whom the defendant could report the required information. Accordingly, the prosecution failed to show that the defendant violated the notification requirement of § 619. Further, because it is uncontroverted that the defendant remained at the scene of the accident while the decedent's brother went to seek medical assistance and stayed there until qualified medical personnel arrived, the prosecution failed to show that the defendant violated the requirement of § 619 that he render reasonable assistance in securing medical aid. Under the facts, the prosecution failed to present sufficient evidence to sustain a conviction under § 617.

Reversed.

WHITE, J., dissenting, stated that sufficient evidence was elicited to sustain a conviction under MCL 257.617; MSA 9.2317 because where, as here, the person to whom the information required by MCL 257.619; MSA 9.2319 is unable to take the information, the statute requires that the person having the information remain on the scene. Because the defendant failed to leave that information on the body of the decedent, the evidence established violation of the statute.

CRIMINAL LAW — LEAVING THE SCENE OF AN ACCIDENT.

A driver of a vehicle is guilty of the felony of leaving the scene of an accident resulting in serious injury or death where the driver, knowing or believing that such an accident has occurred, fails to stop at the scene of the accident, fails to remain at the scene of the accident until having given the driver's name, address, and vehicle registration number and having exhibited an operator's license to the person struck or the driver or occupants of any vehicle collided with, or fails to render to any injured person reasonable assistance in securing medical aid or transportation; the felony is not shown by a driver's failure to provide the required personal and vehicle information to a person other than to a person injured in the accident or to the driver or a passenger of any vehicle collided with (MCL 257.617, 257.619; MSA 9.2317, 9.2319).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *William M. Fagerman*, Pros-

ecuting Attorney, and *J. Ronald Kaplansky*, Assistant
Attorney General, for the people.

*Charles F. Justian*, for the defendant.

Before: Gage, P.J., and MacKenzie and White, JJ.

Gage, P.J. Defendant appeals as of right from his
conviction after a jury trial of failing to stop at the
scene of a serious personal injury accident in viola-
tion of the provisions of § 617 of the Michigan Vehicle
Code, MCL 257.617; MSA 9.2317. The trial court sen-
tenced defendant to 180 days in jail. We reverse.

The accident involving defendant occurred in Wex-
ford County near Cadillac in the early morning hours
of January 1, 1993. The decedent, Scott Hughes, aged
seventeen at the time of the accident, traveled by
snowmobile with his brother Greg Hughes and sev-
eral friends to the Lost Pines Lodge near Cadillac. At
approximately two o'clock in the morning, while the
group prepared to make the return trip to their cab-
ins, the decedent alone drove his snowmobile around
in a large, open field across the road from the front of
the lodge.

Although no one witnessed exactly how the acci-
dent occurred, Greg and the friends testified that they
believed they saw a snowmobile roll over in the open
field. Greg crossed the road to investigate and discov-
ered that the toppled, smashed, badly damaged snow-
mobile belonged to defendant. Greg assisted defend-
ant in righting his snowmobile, then noticed the dece-
dent lying in the snow some distance away. An impact
had separated the decedent from his boots, a glove
and a pair of goggles, and the decedent was bleeding
from his nose and mouth. An autopsy revealed that

the impact had killed the decedent instantly. The decedent's snowmobile was found running and undamaged approximately seventy-five feet from the decedent's body.

Greg rode back to the lodge and directed the others to summon assistance and to inform his parents of the accident. Greg, and eventually all the others, returned to the decedent's body. Two of the friends saw defendant near the decedent's body attempting to take the decedent's pulse. Approximately ten to twenty minutes elapsed before an emergency medical technician (EMT) arrived. Some time later, an ambulance and police officers also reported to the scene. Another friend at the scene testified that he last noticed defendant shortly after the EMT's arrival. No one could testify with certainty how long defendant remained at the scene. While defendant briefly conversed with a friend of decedent's at the scene regarding his wrecked snowmobile and injured wrist, defendant undisputedly failed to provide anyone at the scene with his name or with any other information regarding the accident.

At some point, defendant returned to his cabin. He indicated to his friend David Fordon that he had been involved in an accident and that he believed he had hit someone. Fordon and his wife left for the Lost Pines Lodge to ascertain whether they could provide any assistance, but defendant did not accompany them. Defendant's identity remained a mystery to the authorities until December 1994 when John Becker, another guest at defendant and Fordon's cabin on the weekend of the accident, contacted the police. Becker explained that he had waited to report his knowledge of the accident because he had worked

for Fordon and feared that providing any information would result in the termination of his employment.

Defendant was charged with vehicular manslaughter, MCL 750.321; MSA 28.553, operating under the influence and causing death, MCL 257.1515a; MSA 9.3200(15a),[1] and failure to stop at the scene of a serious personal injury accident, MCL 257.617; MSA 9.2317. At the conclusion of the preliminary examination, the district court bound defendant over on the failure to stop charge only. The circuit court remanded the case back to the district court for a determination of the nature of the situs of the accident. The district court found probable cause that the accident occurred on private property open to public travel, and again bound the case over to the circuit court for jury trial, after which the jury found defendant guilty.

Although defendant raises several issues on appeal, we need only address the dispositive issue whether the prosecutor failed to present sufficient evidence that defendant violated § 617 by failing to provide information regarding his identity and information regarding the snowmobile he was driving at the time of the accident. In determining a question regarding the sufficiency of evidence, we review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could conclude that the elements of the crime were proved beyond a reasonable doubt. *People v Stevens*, 230 Mich App 502, 504; 584 NW2d 369 (1998). This issue involves the interpretation of a statute, the application of which is

---

[1] Repealed by 1995 PA 58, § 90106, MCL 324.90106; MSA 13A.90106, and replaced with MCL 324.82127; MSA 13A.82127.

a question of law that we review de novo. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998).

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Id.* at 273-274. The first criterion in determining intent is the specific language of the statute. *People v Pitts*, 216 Mich App 229, 232; 548 NW2d 688 (1996). The Legislature is presumed to have intended the meaning it plainly expressed. *People v Fetterley*, 229 Mich App 511, 525; 583 NW2d 199 (1998). If the statutory language is clear and unambiguous, judicial construction is precluded. *Pitts, supra.* Statutory language is clear and unambiguous when reasonable minds could not differ with regard to its meaning. See *People v Armstrong*, 212 Mich App 121, 123; 536 NW2d 789 (1995). Criminal statutes must be strictly construed, with each word interpreted according to its ordinary usage and common meaning. *People v McCullough*, 221 Mich App 253, 255; 561 NW2d 114 (1997).

We reluctantly conclude that defendant's conduct did not violate the explicit language of § 617 and that his conviction must be reversed. The relevant portion of § 617 provides as follows:

> The driver of a vehicle who knows or who has reason to believe that he or she has been involved in an accident upon either public or private property, when the property is open to travel by the public, resulting in serious or aggravated injury to or death of a person shall immediately stop his or her vehicle at the scene of the accident and shall remain there until the requirements of section 619 [MCL 257.619; MSA 9.2319] are fulfilled. [MCL 257.617(1); MSA 9.2317(1).]

Section 619 provides:

> The driver of any vehicle who knows or who has reason to believe that he has been involved in an accident resulting in injury to or death of any person or damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving, also the name and address of the owner, and exhibit his operator's or chauffeur's license *to the person struck or the driver or occupants of any vehicle collided with* and shall render to any person injured in such accident reasonable assistance in securing medical aid or transportation of injured person or persons. [Emphasis added.]

The clear and unambiguous language of § 619's disclosure requirement precludes us from concluding that defendant's conduct in the instant case was criminal as contemplated by this section. The statute does not contemplate imposing a notice requirement with respect to third persons in general, but only requires that certain disclosures be made to those individuals specifically listed within § 619. In interpreting penal statutes, this Court requires clarity and explicitness in the defining of the crime and the classification of acts that may constitute it. *People v Reeves*, 448 Mich 1, 13; 528 NW2d 160 (1995). We will not, however, usurp the Legislature's role by expanding the scope of the proscribed conduct. *Id.* Although it is undisputed that defendant failed to provide anyone with his name, address, operator's license, or any information concerning the snowmobile[2] he was driving, the plain language of § 619 mandates only that defendant provide this information "to the person struck or the driver or occupants of any vehicle collided with." Defendant

---

[2] For purposes of the Michigan Vehicle Code, MCL 257.1 *et seq.*; MSA 9.1801 *et seq.*, a snowmobile qualifies as a "vehicle" as defined by MCL 257.79; MSA 9.1879. See *Montgomery v Dep't of Natural Resources*, 172 Mich App 718, 722; 432 NW2d 414 (1988).

apparently struck the decedent after the decedent, traveling alone, had dismounted from his snowmobile. In light of the undisputed facts that the decedent was instantly killed and that at the time of the accident he was traveling alone, there was no one designated by § 619 to whom defendant could provide the information.[3] While we believe that any reasonably responsible person in defendant's situation would have offered the required information to at least one of the many people who subsequently arrived on the scene, including the decedent's brother and friends, the EMT, the ambulance technicians, or the police, we may not construe the clear and unambiguous language of § 619 as requiring defendant to do so. *Reeves, supra; Pitts, supra.*

Nor may we uphold defendant's conviction on the basis that defendant failed to render reasonable assistance in securing the decedent medical aid or transportation, as § 619 also requires. Given that the decedent was instantly killed, defendant in reality could not have provided any medical assistance at the scene. However, undisputed testimony established that after the accident defendant attempted to take the decedent's pulse and remained at the scene, near the decedent's body, for at least ten minutes until the EMT arrived. Defendant's presence at the scene until the arrival of qualified medical assistance distinguishes this case from *People v Hoaglin*, 262 Mich 162; 247 NW 141 (1933), cited by the prosecutor. In *Hoaglin*, the vehicle in which the defendant and several others were riding struck a lone pedestrian. *Id.* at

---

[3] We disagree with the dissent's interpretation that § 619 would impose on defendant the macabre responsibility to somehow affix the required information to the decedent's person.

165-166. No one else witnessed the accident. *Id.* at 165. After examining the body, determining that they had killed the pedestrian, and conferring for several minutes, the group dragged the pedestrian's body to the side of the road and simply left it there, notifying no one. *Id.* at 166. The defendant, charged with being the driver of a car involved in an accident resulting in injury and death and with knowingly and wilfully failing to render reasonable assistance, argued that she was innocent because she could not have rendered any reasonable assistance to the pedestrian who was already dead and that "it would have been futile to take him to a physician or surgeon for medical and surgical treatment, inasmuch as it was apparent that such treatment was unnecessary." *Id.* at 168. However, the Supreme Court concluded:

> Aside from the cruel and inhuman manner in which [the pedestrian's] body was dragged across the highway and left exposed at the side of the road, it was not within the province of the driver or the others to determine whether or not [the pedestrian] was dead at the time the body was abandoned. There may have been a spark of life remaining. Defendants are not physicians, and it was their duty to carry him to a physician or surgeon for medical and surgical inspection and treatment. [*Id.* at 168-169.]

In this case, although the decedent's brother and friends were responsible for contacting the authorities, defendant remained nearby in an apparent effort to provide whatever assistance he could offer. Unlike *Hoaglin*, defendant undisputedly remained available to render assistance until a qualified authority arrived. Thus, we conclude that *Hoaglin* is not controlling in this situation and that defendant is not guilty of failing to render reasonable assistance.

Therefore, we find that the prosecutor has presented insufficient evidence that defendant violated MCL 257.617; MSA 9.2317.

Sections 617 and 619 reflect the legislative intent to curb hit-and-run accidents and encourage drivers involved in accidents to assume responsibility for identifying themselves and offering assistance, thus promoting public safety.[4] To the extent our holding in this case contravenes this legislative intent, we reiterate that we are bound in our decision by the plain, clear, and unambiguous statutory language of § 619 that requires defendant to identify himself only to the injured party or to anyone traveling in the same vehicle as the injured party. *Fetterley, supra*; *Pitts, supra*. In interpreting penal statutes, courts cannot expand the scope of the statutory prohibition. *Reeves, supra* at 8. If there is doubt with regard to whether the act charged is embraced in the prohibition, that doubt is to be resolved in favor of the defendant. *People v Jones*, 142 Mich App 819, 823; 371 NW2d 459 (1985). While decency and common sense would seem to dic-

---

[4] See Senate Fiscal Agency Bill Analysis, HB 4964, December 4, 1989; House Legislative Analysis, HB 4964, October 9, 1989, which address Michigan's hit-and-run accident problem and the Legislature's efforts to address it by increasing the potential penalties for violations of MCL 257.617; MSA 9.2317. See also *People v Thompson*, 259 Mich 109, 121-124; 242 NW 857 (1932), upholding the constitutionality of the statutory stop and report and reasonable assistance requirements. The Supreme Court explained:

In accepting the [driver's] license from the State, one must also accept all reasonable conditions imposed by the State in granting the license. The State has seen fit to impose as such conditions the various provisions embodied in [1929 CL 4722, a predecessor to MCL 257.619; MSA 9.2319]. These provisions are not only humanitarian, but obviously contribute to the mutual welfare and safety of all users of the highways. [*Thompson, supra* at 123.]

tate that the driver of a vehicle that kills another individual who is traveling alone provide the information envisioned by § 619 to anyone else subsequently arriving on the scene, § 619 does not impose such a requirement.

In light of our conclusion that the language of §§ 617 and 619 does not reach defendant, it is unnecessary for us to address the other issues defendant raises.

Reversed.

MacKenzie, J., concurred.

White, J. (*dissenting*). I agree with the majority that the goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature and that the primary criterion in determining intent is the language of the statute. I also agree that criminal statutes must be strictly construed, with each word accorded its ordinary and common meaning. I dissent, however, because I conclude that the statutes at issue can be interpreted in a manner that gives effect to both their specific language and the apparent legislative intent.

MCL 257.617(1); MSA 9.2317(1) states that the driver of a vehicle who knows or who has reason to believe that the driver has been involved in an accident on public or private property that is open to public travel, resulting in serious injury or death, shall immediately stop at the scene and *shall remain there until the requirements of MCL 257.619; MSA 9.2319 are fulfilled.* MCL 257.619; MSA 9.2319 requires that the driver give his name, address, and other information to the person struck or the driver or occupants of any vehicle collided with. Here, the decedent was

the person struck. The decedent was unable to take the information from defendant, and defendant failed to leave the information on the decedent's person. Therefore, the requirements of MCL 257.619; MSA 9.2319 were not met, and defendant was required to remain at the scene under MCL 257.617(1); MSA 9.2317(1).[1]

---

[1] The disposition of this case does not require consideration of the application of the statutes in circumstances where the driver remains at the scene until the authorities have departed. Here, the evidence showed that although defendant remained at the scene for a time, he left the scene well before the police departed, and without identifying himself.